UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:16-CV-199-KKC-EBA

LEXINGTON INSURANCE CO.
as Subrogee of ESSAR Minerals,                                                                          PLAINTIFF,

V.                 **MEMORANDUM OPINION AND ORDER**

APPALACHIAN ENTERPRISES SECURITY                                             DEFENDANT/
SERVICES, LLC, d/b/a TMK Security,                                                   THIRD PARTY PLAINTIFF,

V.

ESSAR MINERALS, INC., et al.,                                                       THIRD PARTY DEFENDANTS.

## INTRODUCTION

In seeking to ward against vandalism or theft at one of its various mineral and natural resource operations, Essar Minerals, Inc. contracted with Defendant, Appalachian Enterprises Security, for purposes of providing protection for Essar's assets and mine sites. Essar similarly contracted with Plaintiff, Lexington Insurance Company, to provide insurance to Essar in case a theft or vandalism in fact occurred. Then, on September 16, 2014, despite this security contract with Defendant, Essar experienced a theft loss of $980,800.00 at a site Defendant was contracted to protect. Because of this incident, Plaintiff, as insurer of Essar, was contractually liable to Essar for the full amount of that loss. Now, as subrogee of Essar, Plaintiff seeks to recoup the value of those insurance proceeds from Defendant. [R. 1]. In order to do so, Plaintiff filed this action, proceeding against Defendant on two counts: negligence and breach of contract. [R. 1 at 3 ("Count I: Negligence"); *id.* at 4 ("Count II: Breach of Contract")].

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff alleges Defendant negligently executed its duty to use "reasonable care in the security and/or protection" of Essar's property, and that Defendant's negligence was the direct and proximate cause of the theft incident that occurred on September 16, 2014. [*Id.* at 3]. Further, Plaintiff alleges that Defendant "breached its contractual duties when it failed to properly monitor and protect" Essar's property, and that this breach of contract was the direct and proximate cause of the theft. [*Id.* at 4]. Defendant, however, denies all liability for the loss. [*See generally* R. 21]. As a defense, Defendant claims that "the damages alleged by the Plaintiff . . . were caused and brought about by its own negligence and/or failure to investigate and/or the negligence of its insured/subrogor." [*Id.* at 5 ("Tenth Defense")]. Defendant also claims the general assertions of "invalid contract, fraud, deceit or misrepresentation." [*Id.* at 7 ("Twentieth Defense")].

During discovery, Defendant sought "Plaintiff to produce Lexington Insurance Company's policies and procedures regarding claims investigation and personnel files for adjusters handling claims submitted by Essar." [R. 68]. Plaintiff, however, refuses to produce those documents, arguing said documents are irrelevant. [R. 71]. Arguing said documents are in fact quite relevant, Defendant has petitioned this Court to compel Plaintiff to so produce. [R. 68].

Defendant relies on circumstantial evidence and the nature of its own defenses as grounds for the relevancy of the requested documents. First, Defendant notes inconsistencies in the depositions of David Buettner and William Bokel, an insurance adjuster for Plaintiff and a Special Investigation Unit ("SIU") examiner assigned to investigate the theft loss at issue, respectively. [*Id.* at 2–3]. The contradictions in those depositions[1] have led Defendant to believe that the

---

[1] "[A]djuster Buettner testified that once the claim was referred to SIU, his investigation into the claim essentially stopped and SIU was to handle the investigation. To the contrary, SIU investigator Bokel, testified that his investigation into the claim is driven by adjuster Buettner's directive." [R. 68 at 9]. Defendant alleges this

"documents contained within the personnel files will show whether Lexington failed to properly train its adjusters, had knowledge that the adjusters had poorly evaluated or investigated claims, or had overpaid claims and, therefore, should be apportioned liability for failing to properly adjust the subject claim." [*Id.* at 8]. Second, Defendant asserts that the Plaintiff's own negligence in the handling and adjustment of the subject claim resulted in the damages incurred, and contends that the Defendant is entitled to discover the policies and procedures that were to be followed by the handling adjusters. [*Id.* at 9].

Plaintiff responds that "Lexington claim handling and investigation policies and procedures are not relevant to the issues in the matter at hand," [R. 71 at 2]; and that Plaintiff's personnel files are both not relevant and that there is no compelling need for the production of said files, [*Id.* at 5–7]. Instead of refuting the specific discoverability of certain documents through precedent or producing a privilege log, however, Plaintiff largely relies on refutations of Defendant's defenses in an attempt to show the irrelevancy of Plaintiff's policies and procedures. [*See, e.g.*, *id.* at 3 ("If Defendant seeks to argue that but for Plaintiff Lexington's negligence, the theft would not have occurred, we await facts or a legal theory in which an insurer has a duty to prevent theft of its insured's property.")]. Similarly, Plaintiff seeks to show the irrelevancy of Plaintiff's personnel files through accusations against Defendant's counsel. [*See, e.g.*, *id.* at 5 ("Defendant still seeks information regarding reprimands by way of [Mr. Buettner's] personnel file. Such requests border on the line of harassment.")]. Defendant replies that all of the requested information is relevant and discoverable, citing useful precedent, as discussed below. [*See generally* R. 72]. The matter, now fully briefed, is ripe for review.

---

inconsistency "makes the Plaintiff's policies and procedures regarding the adjustment and investigation of claims" relevant and discoverable. [*Id.*].

3

## **STANDARD OF REVIEW**

Fed. R. Civ. P. 26(b)(1) provides that—unless otherwise limited—"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery, however, is not without limitation. It is "well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.* (citing Fed. R. Civ. P. 26(b); *H. L. Moore Drug Exch., Inc. v. Smith, Kline and French Laboratories*, 384 F.2d 97 (2d Cir. 1967)).

Where a party refuses to provide information requested by any other party, which is thought by the requesting party to be within the scope of Fed. R. Civ. P. 26(b)(1), the requesting party may move the court in which the action is pending to compel disclosure of the requested information. Fed. R. Civ. P. 37(a)(3)(B). Such a motion to compel generally may be filed where a party has failed to provide mandatory disclosure; failed to answer or admit an interrogatory or request for admission; or failed to produce discoverable information, materials, or documents—electronic or otherwise. *See generally* Fed. R. Civ. P. 37. A failure to disclose, answer or admit, or produce includes disclosures, answers or admissions, or productions that are "evasive or incomplete." Fed. R. Civ. P. 37(a)(4). Prior to so moving, however, a party seeking to compel disclosure or discovery must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Should the

court determine the matters sought to be compelled fall within the scope of Fed. R. Civ. P. 26, the motion shall be granted.

## I. WHETHER CLAIM INVESTIGATION POLICIES AND PROCEDURES SHALL BE COMPELLED

Defendant, through Request Number 6 of Defendant's Requests for Production of Documents, [R. 68-8 at 3], sought "[a]ny and all of AIG's policies, procedures, and/or handbooks related to handling, evaluating, or investigating claims as testified to by David Buettner and William Bokel." Plaintiff refused to produce the requested documents. *Id.* "Plaintiff objects to this request and states that this information is irrelevant to this case and not likely to lead to discoverable information. Plaintiff further states this information is proprietary." *Id.* As discussed, in Plaintiff's Response to Defendant's Motion to Compel, [R. 71], Plaintiff neither alleges privilege nor cites a privilege log. Rather, Plaintiff relies solely on the assertion that the documents Defendant requests and the claims Defendant makes are irrelevant. [R. 71 at 2–4]. Unfortunately for Plaintiff, as Defendant demonstrates, the substantive law is contrary to Plaintiff's assertions. [*Id.*; *contra Grange Mut. Ins. Co. v. Trude et al.*, 151 S.W.3d 803 (Ky. 2004); *see also Jones v. Liberty Mutual Fire Ins. Co.*, 2008 WL 49058 (W.D. Ky. Feb. 20, 2008)]. "[T]he policies and procedures given to adjusters and SIU investigators regarding the handling and investigation and adjustment of a claim is relevant and discoverable in this matter." [R. 68 at 9].

Plaintiff's policies and procedures are neither irrelevant to this cause of action nor prohibited due to some proprietary nature under Fed. R. Civ. P. 26, and Plaintiff fails to cite to any law or precedent to the contrary. Defendant has asserted as a defense to Plaintiff's claims against Defendant that Plaintiff was negligent with regard to the insurance payout made by Plaintiff at the time relevant to this case. [*See generally* R. 68]. Information tending to show that Plaintiff may have been negligent with regard to the payment of the subject claim is thus discoverable. Similar

discovery has previously been ordered on the basis of bad faith claims by the Supreme Court of Kentucky. *Grange Mut. Ins. Co.*, 151 S.W.3d at 813 ("Grange's training and policy manuals are relevant to Wilder's bad faith claim, and absent some sort of privilege or other showing of irreparable harm, they are discoverable."). Defendant also might seek to show that Plaintiff's claims adjusters negligently failed to adhere to Plaintiff's internal policies and procedures, or that Plaintiff failed to properly train its claims adjusters and/or SIU Investigators. [*See generally* R. 72]. In any event, Fed. R. Civ. P. 26 provides discovery may be had as to any matters relevant to any "claim or defense." For that reason, Plaintiff's "policies, procedures, and/or handbooks related to handling, evaluating, or investigating claims" are relevant to this matter and subject to discovery, "absent some sort of privilege or other showing of irreparable harm." [R. 68-8 at 3; *Grange Mut. Ins. Co.*, 151 S.W.3d at 813].

Plaintiff has also failed, however, to show the requested documents are protected from disclosure under some form of privilege. Plaintiff's sole claim of privilege with regard to its policies, procedures, and handbooks arises through Plaintiff's objection that Plaintiff's policies, procedures, and handbooks are proprietary. [R. 68-8 at 3]. Plaintiff fails, however, to elucidate this claim, and Plaintiff also fails to provide or cite to any privilege log. Such vague claims of privilege are insufficient to except documents from discovery. "[A] blanket, vague claim of privilege is not enough." *Grange Mut. Ins. Co.*, 151 S.W.3d at 817; *see also id.* at 818 ("A thorough description of the records, perhaps in the form of a privilege log, would have been enough to show irreparable harm."). For that reason, Plaintiff shall be required to produce the documents sought by Defendant through Request Number 6 of Defendant's Request for Production of Documents, [R. 68-8 at 3], but only in so far as those documents were in force and applicable at the relevant times of this dispute.

## II. WHETHER PERSONNEL FILES SHALL BE COMPELLED

Defendant, through Request Numbers 2, 3, 4, and 5 of Defendant's Requests for Production of Documents, [R. 68-8 at 2–3], sought the "personnel and employment files" of David Buettner, William Bokel, Steve Bruno, and George Howe, "including but not limited to any performance evaluations." Plaintiff refused to produce the requested documents. *Id.* To each of these, Plaintiff responded:

> Plaintiff objects to this request as irrelevant, not related to any claim/affirmative defense asserted in this matter, not likely to lead to discoverable information nor derivative of any testimony already provided . . . . Plaintiff further objects and states that this file contains protected information which cannot be released without production of the proper HIPAA and IRS releases relevant to same.

*Id.* Here again, *Grange Mut. Ins. Co.* provides guidance. It is true that many of the items likely to be found in personnel records—including "original job application, marital information, tax and dependent data, medical information, health insurance data, worker's compensation claims, and retirement account data"—are likely irrelevant or overly broad. *Grange Mut. Ins. Co.*, S.W.3d at 815. "Other information to be found in personnel files (e.g., related to job performance, bonuses, wage and salary data, disciplinary matters) is relevant." *Id.* Job performance and disciplinary information could help to show that any of the aforementioned individuals had engaged negligent practices at other times. Likewise, this information could show or tend to show Plaintiff's approval (or disapproval) of such practices. "This makes those portions of the personnel records related to job performance and disciplinary matters discoverable." *Id.*; *see also id.* ("[I]nsofar as the requested personnel records relate to compensation of the employees involved and the other records relate to how Grange's overall compensation system works, they are discoverable.").

Seeking to overcome *Grange*, Plaintiff cites several cases in its favor. But all of these cases are distinguishable. Plaintiff first cites to *Fritz v. Charter Twp. Of Comstock*, 2010 WL 1856481

7

(W.D. Mich. May 10, 2010), an opinion granting a protective order to Farm Bureau Life Insurance Company of Michigan ("Farm Bureau"), which involved First Amendment and tortious interference with contract claims asserted against the Township of Comstock. *Id.*; *see also Fritz v. Charter Twp. Of Comstock*, 463 F. App'x. 493 (6th Cir. February 15, 2012). The opinion cited by Plaintiff notes that the plaintiff in *Fritz* filed her discovery requests against Farm Bureau nearly two years after the close of discovery, that Farm Bureau was a non-party to the action, and that the plaintiff's discovery requests against Farm Bureau struck "the Court as little more than a fishing expedition." *Fritz*, 2010 WL 1856481, 1–2. Here, unlike *Fritz*, Defendant's requests are timely, [R. 57]; Plaintiff is a party to this action, and, in fact, instituted this action, [R. 1]; and the substantive law of Kentucky dictates that Defendant's discovery requests are relevant. *Grange Mut. Ins. Co. v. Trude et al.*, 151 S.W.3d 803 (Ky. 2004).

Plaintiff's string-cite to other cases likewise involves precedent unhelpful to Plaintiff's position. *Compuware Corp. v. Moody's Investors Serv., Inc.*, 222 F.D.R. 124 (E.D. Mich. 2004) (applying New York and Michigan, not Kentucky, law and nonetheless holding personnel files are discoverable where they are clearly relevant and a compelling need exists); *Miller v. Fed. Express Corp.*, 186 F.D.R. 376, 384–85 (W.D. Tenn. 1999) (holding personnel files are discoverable "upon a compelling showing of relevance," and in fact ordering the production of personnel files); *Raddatz v. The Standard Register Co.*, 177 F.R.D. 466 (4th Div. Minn. 1997) (holding relevant personnel files are discoverable, and in fact ordering the production of personnel files). The only case Plaintiff cites that is truly in favor of its position is *New York Stock Exch., Inc. v. Sloan*, 1976 WL 837 (S.D.N.Y. 1976), which cites public policy concerns in finding certain personnel files to be irrelevant and holding "[e]ven if the employee evaluations were sufficiently relevent (sic) to meet the Rule 26(b) requirement, the court would exercise its judicial discretion to prevent

disclosure." This precedent, however, is over forty (40) years old, appears to be applicable financial audits in the securities context (not insurance), and applies New York—not Kentucky—law. Kentucky substantive law clearly places personnel files within the scope of items discoverable under Fed. R. Civ. P. 26. *Grange Mut. Ins. Co. v. Trude et al.*, 151 S.W.3d 803 (Ky. 2004).

Thus, for all of the aforementioned reasons, Plaintiff shall be required to produce the documents Defendant has requested through Request Numbers 2, 3, 4, and 5 of Defendant's Requests for Production of Documents, [R. 68-8 at 2–3]. Plaintiff, however, shall be required to redact any portions of said documents, disclosure of which would violate HIPPA or IRS privacy directives. The documents to be disclosed by Plaintiff shall also be limited to job performance and disciplinary matters recorded within the five (5) years prior to this Order.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel, [R. 68], is **GRANTED IN PART AND DENIED IN PART**, according to the following:

1. Defendant's Motion to Compel is GRANTED in so far as Defendant seeks the production of Plaintiff's policies and procedures as described in Request Number 6 of Defendant's Requests for Production of Documents, [R. 68-8 at 3], including "any and all of AIG's policies, procedures, and/or handbooks related to handling, evaluating, or investigating claims as testified to by David Buettner and William Bokel;" but Defendant's Motion to Compel is DENIED in so far as such policies would not have applied to the claim at issue.

2. Defendant's Motion to Compel is GRANTED in so far as Defendant seeks Plaintiff's Personnel Records, subject to the condition that Plaintiff shall only be required at this time to produce information pertaining to job performance and disciplinary information related to the individuals named in Request Numbers 2, 3, 4, and 5 of Defendant's Requests for

9

Production of Documents, [R. 68-8 at 2–3]; Plaintiff shall REDACT the portions therein containing personal information of employees; and the information required to be produced is limited to the job performance and disciplinary information recorded within the five (5) years prior to the filing of this action.

    This the 5th day of December 2017.

Signed By:
*Edward B. Atkins*  /s/ EBA
United States Magistrate Judge